UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


James W. McCarthy

    v.                                      Civil No. 04-cv-477-JD
                                                Opinion No. 2005 DNH 165
Citigroup Global Markets, Inc.


O R D E R

     James W. McCarthy contends that his former employer, Citigroup Global Markets, Inc. ("CGMI"), violated the New Hampshire wage laws in the operation of the Capital Accumulation Plan ("CAP"), which he participated in while employed at CGMI. McCarthy and CGMI arbitrated his claims before a panel of the National Association of Securities Dealers-Dispute Resolution, Inc., as required by the parties' agreement. The panel denied McCarthy's claims and requests for relief, and McCarthy brought an action in this court, moving to vacate the panel's decision.

     The court granted McCarthy's motion and remanded the case. On remand, a new panel considered McCarthy's claims and requests for relief and again denied them. McCarthy's motion to reopen the case was granted, and he moves to vacate the panel's award and to remand the case for a third arbitration proceeding. CGMI opposes McCarthy's motion to vacate and moves to confirm the award.[1]

---

[1] CGMI requested oral argument. Given the extensive record and the parties' memoranda, oral argument would not be of assistance to the court. LR 7.1(d).

Background

James W. McCarthy was financial consultant at CGMI for eighteen years, earning commissions and other compensation. Beginning in 1993, McCarthy participated in the CAP, a stock purchase plan offered by CGMI. The CAP permitted certain employees, including McCarthy, to designate a portion of their compensation to be used to buy restricted stock at a discounted price. Participating employees, including McCarthy, elected in writing to have income withheld from their payroll checks to be used to buy shares of restricted stock. Participating employees paid income taxes on the value of the stock upon vesting unless they elected, as McCarthy did, to pay payroll taxes at the time the money was deducted.

The "quid pro quo" for the discounted price of the stock was that the shares did not vest when they were purchased, requiring the participating employee to remain employed for two years after the purchase before vesting would occur. If the employee did not remain employed for that time, both the unvested shares and the compensation that was used to buy them were forfeited to CGMI. McCarthy left his employment with CGMI in May of 2003, before some of the restricted shares of stock he had elected to purchase under the CAP had vested. As a result, those shares, along with the compensation that was used to purchase them, were forfeited

to CGMI.  McCarthy disputed that result and sought arbitration, as required by his agreement with CGMI.  See James W. McCarthy v. Citigroup Global Markets, Inc., NASD-DR Case No. 2003-09195.

In the arbitration proceeding, McCarthy claimed that the CAP vesting provisions unlawfully caused him to forfeit $257,346 in compensation.  He also claimed that CGMI violated the New Hampshire wage laws by making unlawful deductions from his compensation to purchase the shares, by failing to pay him compensation in cash, and by withholding compensation after the termination of his employment.  Both McCarthy and CGMI argued their cases under the New Hampshire wage laws, which they agree apply in this case.  The arbitration panel found in favor of CGMI and against McCarthy.  The panel's decision, however, was not based on the New Hampshire wage laws, which the panel held were irrelevant, but instead the panel resolved the case based on its view of common practices in the securities industry.

McCarthy brought suit in this court seeking to have the decision vacated and the case remanded.  The court granted McCarthy's motion, concluding that the arbitration panel's decision was based on a manifest disregard for the governing law. On remand, a second panel was convened to hear McCarthy's claims. Again, the parties presented arguments based on the New Hampshire wage laws.  CGMI filed a "Motion for Judgment," asking the panel to dismiss McCarthy's claims.  McCarthy objected to the motion

and also moved to "poll" the arbitrators, arguing that CGMI was asking the panel to disregard the law, despite this court's order on remand, and asking the arbitrators to affirm that they would follow the rulings stated in the remand order.  The panel denied both motions.

After a hearing, the panel issued its decision, titled "Modified Award," denying McCarthy's claims and requests for relief.  The panel reviewed the procedural history of the case, acknowledging this court's remand order.  In the part of the award titled "Panel's Report," the panel stated that it had "fully considered all claims and defenses, including the applicability of the New Hampshire Wage Laws, which were heavily argued by both sides.  After full consideration of the matter, the Panel decided to deny all claims with prejudice."  McCarthy asks that the "modified award" be vacated and that the case be remanded for a third arbitration proceeding.

## Discussion

As the court explained in the previous order, "[j]udicial review of an arbitrator's decision is extremely narrow and deferential."  Poland Spring Corp. v. United Food & Commercial Int'l Union, 314 F.3d 29, 33 (1st Cir. 2002).  The Federal Arbitration Act provides certain limited grounds for vacating an arbitration award.  See 9 U.S.C. § 10.  "[T]he statute 'carefully

limits judicial intervention to instances where the arbitration has been tainted in certain specific ways . . . [and] contains no express ground upon which an award can be overturned because it rests on garden-variety factual or legal [errors].'" P.R. Tel. Co. Inc. v. U.S. Phone Mfg. Corp, 427 F.3d 21, 25 (1st Cir. 2005) (quoting Advest, Inc. v. McCarthy, 914 F.2d 6, 8 (1st Cir. 1990)); see also Poland Springs, 314 F.3d at 33 (court not conducting appellate review "to hear claims of factual or legal error by an arbitrator or to consider the merits of an award"). "An arbitrator's award must be enforced if it is in any way plausible, even [if the court] think[s] [the panel] committed serious error." Wonderland Greyhound Park, Inc. v. Autotote Sys., Inc., 274 F.3d 34, 35 (1st Cir. 2001) (internal quotation marks omitted).

The stringent standard of review leaves only rare circumstances when an arbitration award will be vacated, "such as when there was misconduct by the arbitrator, when the arbitrator exceeded the scope of her authority, or when the award was made in manifest disregard of the law." Airline Pilots Ass'n, Int'l v. Pan Am. Airways Corp., 405 F.3d 25,30 (1st Cir. 2005). The court concluded that the first arbitration award was made in manifest disregard of the governing law, based on the panel's statement that the New Hampshire wage laws were irrelevant. McCarthy argues that the second panel's decision was also made in

manifest disregard of the law.

"'[M]anifest disregard' means that arbitrators knew the law and explicitly disregarded it." P. R. Tel. Co., 427 F.3d at 32 (internal quotation marks omitted). "Put differently, disregard implies that the arbitrators appreciated the existence of a governing legal rule but wilfully decided not to apply it." Id. Because arbitrators are not required to explain or provide reasoning for their decisions, and frequently do not do so, an award will be vacated due to a manifest disregard of the law "only when the award is unfounded in reason and fact, . . . based on reasoning so palpably faulty that no judge or group of judges could ever conceivably have made such a ruling, or is mistakenly based on a crucial assumption which is decidedly a non-fact." Id. (internal quotation marks omitted).

In the first award, the panel stated that the New Hampshire wage laws were irrelevant. As such, the panel explicitly disregarded the governing law so that it was not necessary to look behind that decision to determine its basis. In vacating that award and remanding the case, the court held that the New Hampshire wage laws were the governing law. The second panel stated in its award that it had "fully considered . . . the applicability of the New Hampshire Wage Laws." The panel did not say whether it concluded that the wage laws were applicable or not applicable or whether it had applied that law in making its

6

decision. Therefore, while the second panel's statement did not clearly demonstrate a manifest disregard of the governing law, as the first panel did, the second panel left open the possibility that, contrary to the court's direction in the remand order, the panel concluded that the New Hampshire wage laws do not apply.

A.  Request for a Poll

McCarthy contends that the panel demonstrated its manifest disregard of the governing law by refusing his request that the panel be polled before issuing its award. McCarthy contends that the poll was necessary because CGMI had urged the panel to disregard the governing law and argues that the panel's refusal to affirm that it would follow this court's "legal findings" indicates that the panel did not intend to apply the governing wage laws. The panel stated, however, that it did not grant the motion for the poll because it found no legal basis for such an action. McCarthy has cited no case or any other legal authority supporting his request for a poll, and the court has found none. In the absence of any requirement that the panel submit to such a request, the panel's denial of McCarthy's motion does not support his argument that the panel disregarded the governing law.

B.  Inference of Manifest Disregard

McCarthy contends that the panel's manifest disregard of the governing law may be inferred from the combination of CGMI's arguments to the panel, which McCarthy characterizes as urging the panel to ignore the wage laws, and the panel's resulting decision, which McCarthy contends cannot be justified under the governing law.  CGMI responds that the panel's statements in its award mean that it fully considered and applied the wage laws. CGMI argues that because there is no New Hampshire case directly on point, it was free to provide legal arguments taken from other jurisdictions to support its position that the CAP did not violate the New Hampshire wage laws.  CGMI also argues that its theories, rather than McCarthy's, persuaded the panel.

1.  Panel's modified award.

As is explained above, the second panel's modified award does not expressly state or otherwise show that the panel applied or did not apply the New Hampshire wage laws in this case.[2]  When the case was remanded for further arbitration and was heard by the second panel, the issue of the applicability of the New Hampshire wage laws had been resolved by the court in the remand

---

[2]An arbitration panel need not, and generally does not, provide reasons for or an explanation of its decision.  See, e.g., P.R. Tel. Co., 426 F.3d at 32; Keebler Co. v. Truck Drivers, Local 170, 247 F.3d 8, 12 (1st Cir. 2001).

order, which stated that the case was to be decided under the New Hampshire wage laws. Order, Jan. 28, 2005, at 8. Therefore, the panel's statement that it had considered the applicability of the New Hampshire wage laws, without any stated resolution of that question, equally supports a conclusion that the panel ignored the direction in the court's remand order and again decided that the wage laws were irrelevant.[3]

### 2. Invitation to ignore the law.

McCarthy contends that this case mirrors the circumstances in <u>Montes v. Shearson Lehman Bros., Inc.</u>, 128 F.3d 1456, 1464 (11th Cir. 1997), where the court vacated a decision of the arbitration board as being in manifest disregard of the law. There, counsel for the defendant, Shearson, asked the arbitration board not to follow the Fair Labor Standards Act if they found that the plaintiff, Montes, was not exempt from its coverage; the board noted Shearson's plea in its decision; and nothing in the decision or the record indicated that the board did not follow Shearson's urging. <u>Id.</u> at 1459, 1461, 1462. The court concluded that Shearson had blatantly urged the board to disregard the

---

[3] In fact, CGMI's counsel argued to the second panel that it could conclude that the New Hampshire wage laws did not apply. That is a curious argument given CGMI's position before the court that the wage laws do govern McCarthy's claims, the court's remand order directing further proceedings under the wage laws, and CGMI's statement in its motion to the arbitration panel that the CAP was lawful under New Hampshire law.

applicable law in order to rule in its favor and that both the written decision and the lack of evidentiary support for Shearson's position demonstrated that the board did as it was urged to do.  Id. at 1461 & 1464.

The concurring judge in Montes summarized the factual predicate necessary to support the narrow decision in that case as follows:

> 1) the party who obtained the favorable award had conceded to the arbitration panel that its position was not supported by the law, which required a different result, and had urged the panel not to follow the law;
> 2) that blatant appeal to disregard the law was explicitly noted in the arbitration panel's award;
> 3) neither in the award itself nor anywhere else in the record is there any indication that the panel disapproved or rejected the suggestion that it rule contrary to law; and 4) the evidence to support the award is at best marginal.

Id. at 1464.  In this case, CGMI did not concede that its position was unsupported by the New Hampshire wage laws, which would require a different result.  Instead, CGMI argued the CAP was lawful.  The arbitration panel's decision did not note an appeal by CGMI to disregard the law.  Therefore, the circumstances in this case are not sufficiently similar to those in Montes to permit application here of that narrowly limited decision.

### 3. Arguable or plausible basis for decision.

The court's review of an arbitration award "is extremely narrow and deferential." Poland Spring, 314 F.3d at 33. "Nevertheless, acknowledging that [the court's] role is a limited one is not the equivalent of granting limitless power to the arbitrator." Id. Although an arbitration award cannot be vacated due to garden variety legal or factual errors, the award will be vacated if it is in manifest disregard of the law, meaning that the arbitrator recognized the applicable law but ignored it. Bull HN Info. Sys. v. Hutson, 229 F.3d 321, 330-31 (1st Cir. 2000). In other words, an arbitration award will be confirmed unless it is in no way arguably or plausibly compatible with the governing law. Wonderland, 274 F.3d at 35. When the governing standard is clear, arbitrators are not free to substitute their own view of justice based on practices within the industry. See Poland Spring, 314 F.3d at 33.

In the remand order, the court set forth the governing legal principles under the New Hampshire wage laws as follows:

> The pertinent New Hampshire statutes impose restrictions on employers and provide a cause of action for employees to claim unpaid wages. See RSA 275:42, et seq. The New Hampshire wage laws apply to "compensation . . . for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission, or other basis of calculation." RSA 275:42, III. Incentive compensation plans and profit sharing plans are compensation covered by the wage laws. See In re Coffey, 144 N.H. 531 (1999); Ives v. Manchester Subaru, Inc., 126 N.H. 796, 799-800 (1985). Among other restrictions and

> requirements provided by the New Hampshire statutes, RSA 275:43 governs the payment of wages and salaries; RSA 275:48 restricts deductions that may be made from an employee's compensation, limiting authorized deductions to those listed in the New Hampshire Department of Labor regulations, and RSA 275:50 prohibits waiver of the wage laws by private agreement.

Order, Jan. 28, 2005, at *2-3.[4]  In response to CGMI's argument that it would prevail on the merits of McCarthy's claims, based on Marsh v. Prudential Secs. Inc., 802 N.E.2d 610 (N.Y. 2003) (construing New York Labor Law § 193), the court declined to address the merits but explained that "[b]ecause the Marsh decision is based on a provision in § 193 that broadens the circumstances when such deductions may be made, which the New Hampshire statute does not include, that decision is not on point as to the deduction issue."  Order at 8, n.5.

There is no dispute in this case that the CAP was an incentive compensation plan, and CGMI stated as much to the arbitration panel.  Through McCarthy's authorized participation in the CAP, he received some of his compensation in cash and the remainder was deducted or withheld by CGMI to pay for Citigroup Restricted Stock.  The stock did not vest when it was issued but, instead, vested two years later so that if a participating employee, such as McCarthy, resigned within the two-year vesting period, he forfeited the stock to CGMI.  Therefore, there is no

---

[4] Parts of RSA 275 were amended after 2003, making those changes inapplicable in this case.

dispute that CGMI deducted or withheld compensation, with authorization, that was used to pay for stock, which was subject to a two-year vesting rule.  CGMI also does not dispute that it did not pay McCarthy the compensation he had earned that was deducted to pay for stock that was forfeited.  In other words, when McCarthy resigned, CGMI kept both the stock and McCarthy's compensation that was deducted to purchase it.

In the arbitration proceeding, McCarthy argued that the CAP violated New Hampshire wage laws because his compensation was neither paid entirely in cash nor legally deducted and because the CAP vesting provision caused him to forfeit both the stock and the compensation deducted to pay for it.  He also claimed that New Hampshire law prohibited private agreements that waived the requirements of the New Hampshire wage laws.  CGMI argued that the CAP was lawful, analogizing to Marsh, and that McCarthy had voluntarily undertaken the risk of the CAP and had profited from it.

The principles of the New Hampshire wage law are set forth in the statutes, and McCarthy argued those principles to the arbitration panel.  New Hampshire law requires employers to pay their employees the wages they have earned, RSA 275:43, I & 275:43-b, and to pay any wages earned to an employee who resigns, RSA 275:44,II.  Lawful deductions are limited to those an employer is required or empowered to make by federal or state

13

law, those authorized by an employee in writing and provided in the labor regulations, and those made for certain medical services pursuant to rules or regulations.[5]  RSA 275:48, I; N.H. Admin. Rules, Lab. 803.03(c) (1999).  In addition, the requirements of the New Hampshire wage laws may not be waived by private agreement.  RSA 275:50, I.

 CGMI's arguments to the arbitration panel, that the CAP was lawful because McCarthy's compensation, paid in cash and restricted stock, conferred a benefit to him, because McCarthy had agreed to participate in the CAP and was a sophisticated and intelligent financial consultant, and because McCarthy had benefitted in the past from the CAP, are not pertinent to the principles of New Hampshire law.  Instead, CGMI's argument is based on the reasoning of the Court of Appeals of New York in <u>Marsh</u>, construing New York law.  CGMI represented to the arbitration panel that the New Hampshire wage laws allowed deductions as long as they accrued "to the benefit of the employee," Motion for Judgment at 7, that the New Hampshire laws, like the New York law, allowed a deduction "for the benefit of

---

[5]The applicable regulation provides that properly authorized deductions may be made for payroll taxes or as otherwise required by statute; payments for legitimate loans by the employer; union dues; health and pension fund contributions; voluntary contributions to charities; housing and utilities; "[p]ayments into savings funds held by someone other than the employer;" voluntary rental fees for non-required clothing; costs of voluntary cleaning of clothing, and for an employee's use of a demonstrator vehicle.  N.H. Admin. Rules 803.03(c).

the employee," id. at 8, and that the CAP was a lawful fringe benefit plan as was held in Marsh, id.

As this court pointed out in the remand order, which the arbitration panel noted in the award, New York law, which was at issue in Marsh, is significantly different from New Hampshire law. The pertinent provision under New York law, § 193, states that an employer may make authorized deductions from an employee's wages for specified purposes and for "similar payments for the benefit of the employee." The corresponding New Hampshire statute, RSA 275:48, I(b), requires that deductions both accrue to the benefit of the employee and be for one of the specified purposes listed in 803.03(c). Therefore, under New Hampshire law, unlike New York law, a deduction is not lawful simply because it accrues to the benefit of an employee. Because Marsh was decided based upon the "benefit of the employee" provision in § 193, neither its analysis nor its reasoning is applicable or persuasive here. In addition, Marsh did not address the issue of forfeiture of earned compensation, which is part of McCarthy's claim in this case.

CGMI also argued that the CAP was a lawful deduction as a payment into a savings fund held by someone other than the employer and that it was empowered by the federal tax treatment of similar plans to offer the CAP. See N.H. Admin. Rules, Lab. 803.03(c)(2)(f) (1999); 26 U.S.C. §§ 83, 125. The argument that

the CAP is a savings fund might hold more sway if it did not require forfeiture of the unvested portion of the compensation deducted, which would be an unusual provision in a savings fund. CGMI's argument that the tax code "empowers" it to deduct compensation for the CAP depends on both an expansive view of "empowers" and the amendments to RSA 275:48 that were not in effect at the time in question.  Neither argument is persuasive.

    Nevertheless, it is perhaps arguable that the panel was sufficiently confused or misled by CGMI's arguments to conclude that the CAP deductions comported with New Hampshire law.  Even assuming that the CAP deductions were lawful, however, CGMI did not offer the arbitration panel any justification under New Hampshire law for its failure to pay McCarthy the compensation that he had earned before he resigned.  That he had profited from his past participation in the CAP does not excuse CGMI from paying him as required under New Hampshire law.  CGMI's oft-repeated theory, that McCarthy was intelligent and sophisticated and voluntarily undertook the risk of forfeiting compensation by agreeing to participate in the CAP, persuaded the Court of Appeals of New York but does not comport with New Hampshire law that requires an employer to pay an employee his earned compensation.  RSA 275:43 & 275:44.  New Hampshire law also does not allow employees and employers to agree to waive the requirement that wages be paid.

Judicial review of the panel's decision is complicated in this case, as in most arbitration cases, by the lack of any reasons given for the decision.  See Bull HN Info., 229 F.3d at 331 n.7.  In the absence of any explanation, there appears to be no arguable or plausible basis for the panel to have ruled either that the New Hampshire wage laws did not apply to McCarthy's claims or that CGMI's failure to pay McCarthy earned compensation, based on the forfeiture provision in the CAP, was lawful.  In either case, the panel's decision necessarily was made in manifest disregard of the law.[6]  See, e.g., Hardy v. Walsh Manning Secs., L.L.C., 341 F.3d 126, 133 (2d Cir. 2003); Poland Spring, 314 F.3d at 33-37; Halligan v. Piper Jaffray, Inc., 148 F.3d 197, 203-04 (2d Cir. 1998).

Once again the case must be remanded to have McCarthy's claims decided under the New Hampshire wage laws through arbitration as provided by the National Association of Securities Dealers, Inc.  Before more time and money is spent on litigation, however, the court expects the parties to use their best efforts to resolve this matter between them.  In the event those efforts

---

[6] Because neither alternative basis for the decision is reasonable, given the governing law, a remand for clarification would not be beneficial here.  Cf. U.S. Energy Corp. v. Nukem, Inc., 400 F.3d 822, 831 (10th Cir. 2005) (holding that where two reasonable alternative interpretations of arbitration award were possible, remand for clarification was necessary); Lanier v. Old Republic Ins. Co., 936 F. Supp. 839, 845-48 (M.D. Ala. 1996) (discussing availability of remand to arbitration panel for clarification).

are not successful and the case returns to arbitration, the court asks the parties to request that the arbitration panel provide an explanation or reasons for its decision to allow meaningful judicial review, if that again should be necessary.

## Conclusion

For the foregoing reasons, the plaintiff's motion to vacate and remand (document no. 20) is granted.  The defendant's cross motion to confirm (document no. 28) and motion for oral argument (document no. 29) are denied.

The case is remanded for further arbitration proceedings as provided by National Association of Securities Dealers – Dispute Resolution, Inc.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

                                                _____
                                                Joseph A. DiClerico, Jr.
                                                United States District Judge

December 15, 2005

cc:   John F. Adkins, Esquire
      W. Wright Danenbarger, Esquire
      Carol E. head, Esquire
      William A. Jacobson, Esquire
      Shanna L. Pitts, Esquire
      John R. Skelton, Esuire